1  MICHELLE R. BERNARD  (SBN:  144582)
   mbernard@grsm.com
2  LAURA G. RYAN (SBN:  184363)
   lryan@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   101 W. Broadway, Suite 2000
4  San Diego, CA 92101
   Telephone:  (619) 230-7769
5  Facsimile:  (619) 696-7124

6  Attorneys for Defendant
   AMCO INSURANCE COMPANY
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 CENTINELA GAS STATION, INC., a          ) CASE NO. 2:19-cv-10805-VAP-KSx
   California corporation,                 )
12                                         ) **MEMORANDUM OF POINTS**
                          Plaintiff,       ) **AND AUTHORITIES IN**
13                                         ) **SUPPORT OF DEFENDANT**
          vs.                              ) **AMCO INSURANCE**
14                                         ) **COMPANY'S MOTION FOR**
   AMCO INSURANCE COMPANY, an              ) **SUMMARY JUDGMENT, OR IN**
15 Iowa corporation; CRUM & FORSTER        ) **THE ALTERNATIVE, PARTIAL**
   SPECIALTY INSURANCE                     ) **SUMMARY JUDGMENT**
16 COMPANY, a Delaware corporation;        )
   and DOES 1 through 20, inclusive,       ) Filed Concurrently With:
17                                         ) Notice of Motion and Motion for
                          Defendants.      ) Summary Judgment; Separate
18                                         ) Statement of Uncontroverted Facts
                                           ) and Conclusions of Law; Declaration
19                                         ) of Keith Sklerov; Declaration or
                                           ) Robert Stayton; Declaration of
20                                         ) Michelle R. Bernard; and [Proposed]
                                           ) Order
21                                         )
                                           )
22                                         ) Judge:    Hon. Virginia A. Phillips
                                           ) Date:     1/25/2021
23                                         ) Time:     2:00 p.m.
                                           ) Room:     8A
24                                         )
25 ─────────────────────────────────────  )

26

27

28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................... 1

II.   FACTUAL BACKGROUND ...................................................... 2

    A.    The Loss and AMCO's Investigation of the Claim ............................ 2

    B.    Plaintiff's Bad Faith Lawsuit .................................................. 5

    C.    Plaintiff's Failure to Comply With FRCP Rule 26 Requirements and Discovery Obligations ........................................... 6

III.  THE AMCO POLICY ............................................................... 7

IV.   LEGAL ARGUMENT ............................................................... 9

    A.    Federal Rule of Civil Procedure 37(c)(1) Prohibits Centinela From Introducing Evidence or Testimony In Opposition To This Motion .......................................... 9

    B.    Summary Judgment Standard .................................................. 12

    C.    General Principles of Contract Interpretation ................................... 12

    D.    Plaintiff's Breach Of Contract Claim Is Without Merit ........................ 13

        1.    Plaintiff's Breach of Contract Claim Fails Because There Is No Evidence of Accidental Physical Loss or Damage to Covered Property ............................ 13

        2.    Even If Plaintiff Could Satisfy Its Burden On The Policy's Insuring Agreement Requirements, Coverage for the Claim Is Barred By Applicable Exclusions ................. 14

            i.    The Policy's Wear and Tear Exclusion Bars Coverage for Damage Caused by Deterioration that Occurs Over Time ............................ 14

            ii.   Negligent Work/Faulty Maintenance Exclusion ............. 15

            iii.  Earth Movement/Settling Exclusion .............................. 16

    E.    Plaintiff's Cause of Action for Bad Faith Is Without Merit ................... 17

    F.    AMCO Cannot Be Liable for Punitive Damages as There is No Evidence that It Acted Maliciously, Oppressively or Fraudulently ........................................ 19

V.    CONCLUSION ........................................................................ 20

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basich v. Allstate Ins. Co.,*
   87 Cal.App.4th 1112 (2001) ...................................................................................19

*Brodkin v. State Farm Fire & Casualty Co.,*
   217 Cal.App.3d 210 (1989) ...................................................................................16

*Brousseau v. Jarrett,*
   73 Cal.App.3d 864 (1977) .....................................................................................19

*Butki v. United Serv. Auto. Assn.,*
   225 Cal.App.3d 464 (1990) ...................................................................................15

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...............................................................................................12

*Chateau Chamberay Homeowners' Assn. v. Assoc. Intern. Ins. Co.,*
   90 Cal.App.4th 335 (2001) ....................................................................................18

*Chodos v. Ins. Co. of N. America,*
   (1989) 126 Cal.App.3d 86 .....................................................................................19

*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.,*
   185 Cal.App.3d 1149 (1986) .................................................................................19

*Fu-Kong Tzung v. State Farm Fire & Cas. Co.,*
   873 F.2d 1338 (9th Cir. 1989) ..............................................................................16

*Garvey v. State Farm Fire & Cas. Co.,*
   48 Cal.3d 395 (1989) .............................................................................................14

*Grebow v. Mercury Ins. Co.,*
   241 Cal.App.4th 564 (2015) ..................................................................................15

*Grieves v. Superior Court,*
   157 Cal.App.3d 159 (1984) ...................................................................................19

*Guebara v. Allstate Ins. Co.,*
   237 F.3d 987 (9th Cir. 2001) .................................................................................17

*Mad Engine, Inc. v. New York Networks, Inc.,*
   2010 WL 1644284 (S.D. Cal. 2010).........................................................9, 10, 11, 12

*Mock v. Michigan Mut. Ins. Co.,*
   4 Cal.App.4th 306 (1992) ......................................................................................19

*Montilla v. Walmart Stores, Inc.,*
   2015 U.S. Dist. LEXIS 123697 (D. Nev. 2015)...................................................10

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen'l Ins. Co.*,
   187 Cal.App.4th 766 (2010) ................................................................. 13, 14

*Murray v. State Farm Fire & Casualty Co.*,
   219 Cal.App.3d 58 (1990) ........................................................................ 15

*New Zealand Ins. v. Lenoff*,
   315 F.2d 95 (9th Cir. 1963) ...................................................................... 16

*Opsal v. United Services Automobile Assn.*,
   2 Cal.App.4th 1197 (1991) ........................................................................ 18

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
   507 U.S. 380 (1993) .................................................................................. 10

*Reichert v. General Ins. Co.*,
   68 Cal.2d 822 (1968) ................................................................................ 13

*Titan Corp. v. Aetna Casualty & Surety Company*,
   22 Cal.App.4th 457 (1994) ................................................................. 12, 13

*Waldsmith v. State Farm Fire & Cas. Co.*,
   232 Cal.App.3d 693 (1991) ....................................................................... 16

*Wallace v. U.S.A.A. Life Gen. Agency, Inc.*,
   862 F.Supp.2d 1062 (D. Nev. 2012) ......................................................... 10

*Waller v. Truck Ins. Exch.*,
   11 Cal.4th 1 (1995) .......................................................................... 12, 13, 17

*Wilson v. Bradlees of New England, Inc*,
   250 F.3d 10 (1st Cir. 2001) ....................................................................... 11

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................ 10, 11

**Statutes**

Civil Code
   Section 1644 .............................................................................................. 12

Civil Code
   Section 3294 .............................................................................................. 19

Code of Civil Procedure
   Section 437c .............................................................................................. 20

**Rules**

Federal Rules of Civil Procedure
   Rule 26 ............................................................................ 1, 2, 6, 9, 10, 11

Federal Rules of Civil Procedure
   Rule 37 ................................................................................ 1, 9, 10, 11, 12

**Gordon Rees Scully Mansukhani, LLP**
**101 W. Broadway, Suite 2000**
**San Diego, CA 92101**

-iii-

Federal Rules of Civil Procedure
   Rule 56 ..................................................................................................... 12

**Regulations**

5 New Appleman on Insurance Law Library Edition § 43.02 (2019) ..................... 16

**Gordon Rees Scully Mansukhani, LLP**
**101 W. Broadway, Suite 2000**
**San Diego, CA 92101**

## I.    <u>INTRODUCTION</u>

This first-party insurance coverage dispute arises out of Defendant AMCO Insurance Company's ("AMCO" or "Defendant") decision to deny coverage benefits allegedly owed under a commercial property policy ("Policy") for costs associated with the repair of a gas vapor leak emanating from a broken underground gas line ("Loss" or "Claim") at a gas station owned by Plaintiff Centinela Gas Station, Inc. ("Insured"/"Plaintiff"/"Centinela").

Procedurally, AMCO is entitled to summary judgment in its favor because Centinela, having failed to comply with its initial disclosure requirements under Federal Rule of Civil Procedure[1] 26(a), is now precluded from presenting any evidence in opposition to this motion for summary judgment pursuant to Rule 37(c)(1) ("Rule 37"). Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Notably, this Rule "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A)." Fed.R.Civ.P. 37(c)(1) advisory committee notes (1993). Based on the record before this Court, Plaintiff's inexcusable failure to comply with its Rule 26 disclosure obligations and respond to discovery in this action are fatal to its claims against AMCO and compel granting summary judgment in its favor.

Even without this procedural bar prohibiting Centinela from submitting evidence in opposition to this motion, AMCO is entitled to judgment in its favor on Plaintiff's breach of contract and bad faith causes of action as a matter of law.  The undisputed evidence supports AMCO's position that the Loss is not covered under the terms of the Policy.  Based on AMCO's investigation of the Loss, the information provided by Centinela in support of its tender of the Claim, the plain language of the

---

[1] All further statutory references are to the Federal Rules of Civil Procedure.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   Policy and applicable law, Centinela has not and cannot establish that AMCO

2   breached any contractual obligations owed under the Policy.

3   Relevant to the Claim, there is no evidence of any direct physical damage to

4   the gas line below the insured property (or to the surface area above) that would be

5   indicative of a fortuitous outside force causing resultant damage to the subject

6   underground pipe.  As such, Centinela cannot establish that the Policy's "direct

7   physical loss of or damage to covered property" insuring agreement requirement is

8   satisfied in the first instance.  Moreover, even if the damage to the underground gas

9   pipe was from a covered cause of Loss (which AMCO denies), AMCO's

10  investigation of the Loss shows that the damage to the subject pipe was caused by

11  long-term wear and tear, negligent work and soil/earth movement – all excluded

12  causes of Loss under the Policy.  Given Plaintiff's failure to comply with its Rule 26

13  obligations and participate in the discovery process in this action, AMCO's

14  conclusions regarding the cause of Loss are unrefuted and unrebutted for purposes

15  of this motion.

16  Simply stated, based on the record evidence, Plaintiff cannot avoid the

17  inevitable conclusion that its case against AMCO suffers from a complete failure of

18  proof.  The admissible evidentiary record lacks any support for a finding that

19  Centinela was entitled to coverage benefits under the Policy that AMCO failed to

20  pay or that AMCO acted unreasonably in its handling and coverage determination

21  regarding the Claim.  Absent breach of a contractual obligation owed under the

22  Policy, Plaintiff's companion claims for bad faith and punitive damages fail as a

23  matter of law.   AMCO respectfully requests the Court grant summary judgment in

24  its favor and dismiss all causes of action against it.

25  **II.    FACTUAL BACKGROUND**

26  **A.    The Loss and AMCO's Investigation of the Claim**

27  Centinela owns and operates a gas station located at 6900 S. Centinela Avenue

28  in Culver City, California ("Property" or "Gas Station"). (Separate Statement of

-2-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Uncontroverted Facts and Conclusions of Law in Support of AMCO's Motion for Summary Judgment/Adjudication, Uncontroverted Fact No. ["UMF"] 1.)  The Loss was discovered on November 13, 2018, and Centinela reported the Claim to AMCO on December 4, 2018 requesting coverage under AMCO Premier Businessowners Insurance Package Policy No. ACP BPA 3026881315 ("Policy") for costs associated with repairing the leaking gas line. (UMF 2.) The Claim was assigned to adjuster Keith Sklerov ("Sklerov").  (UMF 3.)

On January 22, 2019, Sklerov took the recorded statement of Kevin Shamshoni, Centinela's representative and general manager of the Gas Station. (UMF 4.)  Shamshoni explained that every three years Centinela was required to have pressure testing done of the fuel lines to make sure there were no leaks, and when Centinela was having the standard test performed in November of 2018, it revealed a vapor leak. (UMF 4, 5.) There was no fuel being released, only vapor. (UMF 4, 6.)  According to Shamshoni, the testing company said the leak may have been caused by a "bushing" (a threaded fitting connecting the gas lines) that "could be off" causing the vapor to escape into the ground under the Property. (UMF 4, 7.)

Shamshoni was unaware of any specific incident that might have caused the damage to the underground pipe.  (UMF 4, 8.) The gas line leak did not require the Gas Station to shut down and there was no interruption in business. (UMF 4, 9.) Shamshoni stated that the estimate to repair the pipe was approximately $76,000 and the repair work was complicated by needing to dig through 8 to 10 feet of concrete to reach the leaking line. (UMF 4, 10.)

On January 30, 2019, AMCO denied coverage for the Claim.  (UMF  11.) AMCO concluded that there was no coverage for the Claim because there was no evidence of direct physical damage to "Covered Property" as there was no damage to the surface above the pipeline that would suggest the damage was caused by something aboveground. (UMF 12.) AMCO also denied coverage because the evidence indicated the leaking was a result of normal wear and tear and deterioration

-3-

or faulty construction in the original installation of the line or settling of the soil above the pipe, all of which are excluded under the Policy. (UMF 12, 13, 14.)

On June 13, 2019, Plaintiff's attorney Glenn T. Rosen notified AMCO and Crum & Forster Specialty Insurance Company (the insurer that issued a commercial tank storage liability policy to Centinela) that Centinela had retained him to represent it in connection with the Loss. (UMF 15.) Rosen claimed that both insurers failed to properly investigate the Claim and that both were obligated to respond to and indemnify his client for the Loss.  (UMF 15.)

Following receipt of Rosen's letter requesting that AMCO reconsider its coverage denial for the Loss, on June 20, 2019, AMCO reopened the Claim.  (UMF 16, 21.)  The following day (*i.e.* June 21, 2019), Sklerov called engineer Rick Reese of SDC Associates to discuss the Loss and potential cause of the pipe leak. (UMF 17.)  Reese opined that the soil used to backfill the pipes may have been corrosive and explained that if the pipe was not properly "sleeved" before installation, the corrosive soil could cause the pipe to fail. (UMF 18, 19.) Reese alternatively opined that if the weight of the vehicles above the piping system caused damage to the pipe, it would have been due to faulty workmanship because the soil around the pipe was not properly compacted. (UMF 20.)

On June 25, 2019, Sklerov wrote a letter to Rosen acknowledging receipt of the Insured's June 13, 2019 reconsideration request and advised Rosen that AMCO was reopening Centinela's Claim.  (UMF 21.)  On June 27, 2019, Rosen responded to Sklerov's email saying he would call the next day but did not do so. (UMF 22.)

On July 25, 2019, AMCO retained Brian Heintz of ProNet Group ("ProNet") to investigate the cause of the Loss.  (UMF 23.) The same day, Sklerov emailed Rosen again advising that AMCO had retained ProNet to inspect the Loss location and determine the cause of the Loss.  (UMF 24.)  A few weeks later, Sklerov sent Rosen a letter listing the information and documentation that ProNet wanted in advance of the Loss inspection. (UMF 25.)  On September 11, 2019, Sklerov left

-4-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Rosen a voicemail message following up on the requested information.  (UMF  26.)

On September 19, 2019, AMCO sent Rosen a letter reiterating the request for information regarding the proposed inspection of the Loss location, noting that AMCO had not received a response on behalf of Centinela.  (UMF 27.) AMCO advised that if it did not hear back by September 30, 2019, it would assume Centinela was no longer pursuing the Claim and would close its file. (UMF  28.)

On October 1, 2019, AMCO sent Rosen a letter advising that the Centinela Claim had been reassigned to AMCO adjuster Jason Maloy ("Maloy"). (UMF  29.) On November 18, 2019, Rosen emailed Maloy, advised that he had called ProNet to schedule the Loss inspection but ProNet stated that Rosen would need to check with AMCO to see if AMCO still wanted to go forward with the inspection. (UMF 30.) Rosen also noted that the contractual statute of limitations was set to expire the following day and asked AMCO if it would agree to toll the statute of limitations for 90 days to allow for continued investigation.  (UMF 31.)   The following day, November 19, 2019, Maloy called Rosen's office to discuss tolling the statute of limitations but was advised that the lawsuit was already filed.  (UMF 32.)

**B.**   **Plaintiff's Bad Faith Lawsuit**

On November 19, 2019, Centinela filed suit against AMCO and Crum & Forster seeking coverage benefits for the Claim and other extra-contractual damages. In the complaint, Centinela asserts causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing against both Defendants. (UMF  33.)  Centinela claims that AMCO was obligated to effectuate repairs to the insured Property but that AMCO failed to investigate and failed to act in accordance with the terms of the Policy.  (UMF 35.)  Centinela claims that AMCO "determined that the line leaked as a result of normal wear and tear and deterioration, or faulty construction in the original installation of the line, or earth movement, and there was no damage to the covered property." (UMF 36.)  Centinela alleges AMCO made its decision based on a "cursory examination by a regular claim representative" and that

there was "no analysis of the line or the earth undertaken by a qualified professional such as a civil, mechanical or geotechnical engineer or by a geologist or metallurgist." (UMF 37.)  Centinela claims that the Defendants failed to calculate the actual cash value of the damages, improperly delayed the adjustment of the Claim, improperly failed to investigate the loss, deliberately misinterpreted the insurance policies and regulations, and generally employed deceptive, unreasonable, unlawful and unjust claims practices.  (UMF 38.)

Centinela claims that it incurred $141,720.08 in damages associated with the gas line repairs and that it was forced to incur attorneys' fees in presenting its insurance claim.  (UMF 39.) Centinela also claims entitlement to punitive damages alleging that AMCO's conduct was "willful" and that in failing to make payment to Plaintiff, AMCO "committed fraud and acted with conscious disregard of Plaintiff's rights and did so in an oppressive and despicable manner…"  (UMF 40.)

## C.   Plaintiff's Failure to Comply With FRCP Rule 26 Requirements And Discovery Obligations

Following service of Plaintiff's summons and complaint, both Defendants removed the state court case to federal court, Crum & Forster on December 20, 2019 and AMCO on December 24, 2019.  (Dkt. No. 1.)  By stipulation of the parties and order of the Court, the cases were consolidated.  (Dkt. Nos. 16, 21.)

In February 2020, Plaintiff's counsel advised that he was going to substitute out of the case or file a Motion to Withdraw.  (UMF  41.) Neither of those events has occurred. (UMF 41.)

On February 14, 2020, Defendants participated in the Rule 26(f) conference. (UMF 42.) Despite being advised of the Rule 26(f) conference, counsel for Centinela did not appear and nor did Centinela contribute to the Joint Report.  (UMF 43.)

On May 4, 2020 and May 11, 2020, AMCO and Crum Foster respectively served their Initial Disclosures and produced responsive documents pursuant to the Court's March 20, 2020 Scheduling Order and Rule 26(a)(1).  (UMF 44.) On May

-6-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

8, 2020, AMCO served Plaintiff with Requests for Production of Documents and Special Interrogatories.  (UMF 45.)

Plaintiff never served its Initial Disclosures or responded to AMCO's written discovery requests. (UMF 46.) Likewise, Centinela's counsel never responded to multiple follow up communications from AMCO's counsel to meet and confer regarding Centinela's outstanding discovery responses and Initial Disclosures. (UMF 47.) Nor did Centinela's counsel ever respond to AMCO's counsel meet and confer efforts regarding the basis for this summary judgment motion. (UMF 48, 49.)

On September 21, 2020, counsel for the Defendants advised this Court of the ongoing problems with Centinela's unexcused failure to comply with its discovery obligations in this action and deadlines set forth in the Court's Amended Scheduling Order, including ADR compliance.  (Dkt. No. 30.)

## III.   **THE AMCO POLICY**

AMCO issued Businessowners Property Policy No. ACP BPA 3026881315 to Centinela for the policy period effective March 1, 2018 to March 1, 2019.  (UMF 50.) The Policy lists the Property as a scheduled insured location. The Policy's commercial property coverage (Form PB 00 02 04 11) provides in pertinent part:

### A.   **COVERAGES**

We will pay for direct physical loss of or damage to Covered Property…caused by or resulting from any Covered Cause of Loss.

…

### 3.   **COVERED CAUSE OF LOSS**

This Coverage Form insures against Risks of Direct Physical Loss unless the loss is:

#### a.   **Excluded in Section B. EXCLUSIONS**

(UMF 50, 51.)

Relevant to the Loss, the Policy contains a "wear and tear," "latent defect," "settling" and "negligent work" exclusions which provide in relevant part:

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-7-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**B.**   **EXCLUSIONS**

**1.**   We will not pay for direct loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss….

…

  b.   **Earth Movement**

  …

  (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundation or other parts of realty.  Soil conditions include contraction, expansion, freezing, thawing, erosion, [and] improperly compacted soil...

**2.**   We will not pay for loss or damage caused by or resulting from any of the following:

  …

  l.   **Other Types Of Loss**

    (1)  Wear and tear;

    (2)  Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
  …

    (4)  Settling, cracking, shrinking or expansion;

  …

But if an excluded cause of loss that is listed in paragraphs (1) through (7) above results in a "specified cause of loss", "accident" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**3.**   We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.c.  But if an excluded cause of loss that is listed in B.3.a. through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

  …

  c.  **Negligent Work**

    Faulty, inadequate or defective:

-8-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

…

> (2)    Design, specifications, workmanship, **work methods**, repair, construction, renovation, remodeling, **grading, compaction,** failure to protect property;

…

(UMF 50, 52.)

## IV.   **LEGAL ARGUMENT**

### A.   <u>Federal Rule of Civil Procedure 37(c)(1) Prohibits Centinela From Introducing Evidence or Testimony In Opposition To This Motion</u>

Rule 26(a)(1)(A)(ii) required Plaintiff to disclose "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." These disclosures must be made "at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order." Fed. R. Civ. P. 26(a)(1)(C).

Under Rule 37(c)(1):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), **the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial**, unless the failure was substantially justified or harmless. [Emphasis added.]

Rule 37(c)(1) applies to this Rule 56 motion for judgment. *See* Advisory Comm. Note to 1993 amendment ("This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial…or on a motion, such as one under Rule 56.")

Rule 37(c)(1) requires exclusion of evidence for a late disclosure that is neither justified nor harmless. *Mad Engine, Inc. v. New York Networks, Inc.*, 2010 WL 1644284, at *1 (S.D. Cal. 2010) ("*Mad Engine*"). In *Mad Engine*, the defendant failed to produce any documents in violation of Rule 26(a)(1)(A)(ii) and failed to respond to Plaintiffs' written discovery and deposition notices. Plaintiffs moved for summary judgment arguing that based on defendant's failure to comply with his

-9-

1    Initial Disclosure obligations, he should be precluded from presenting evidence to

2    support his opposition to plaintiffs' summary judgment motion.    Defendant

3    disagreed arguing in part that he provided the documents to his counsel who later

4    withdrew from the case without producing the documents.

5        Judge Dana M. Sabraw was unpersuaded and agreed that defendant was

6    prohibited from presenting any evidence in response to Plaintiffs' motion for

7    summary judgment.  The Court noted, in part, that "clients must be held accountable

8    for the acts and omissions of their attorneys," citing *Pioneer Investment Services Co.*

9    *v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396 (1993). Because

10   defendant was precluded from presenting evidence in opposition to plaintiffs'

11   summary judgment motion, the motion was granted. *Mad Engine, supra,* 2010 WL

12   1644284, * 3; *see also*, *Montilla v. Walmart Stores, Inc*., 2015 U.S. Dist. LEXIS

13   123697, *3-5 (D. Nev. 2015) (excluding damages computation that was not

14   disclosed pursuant to Rule 26(a)(1)); *Wallace v. U.S.A.A. Life Gen. Agency, Inc*.,

15   862 F.Supp.2d 1062, 1067 (D. Nev. 2012) (excluding witnesses and evidence that

16   were not disclosed in initial disclosures).

17       The Ninth Circuit's interpretation and application of Rule 37(c)(1) mandates

18   exclusion of any evidence Centinela might belatedly attempt to submit in opposition

19   to AMCO's summary judgment motion.  In *Yeti by Molly Ltd. v. Deckers Outdoor*

20   *Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001), the court held that Rule 37(c)(1) is "self-

21   executing" and "automatic" in order to "provide a strong inducement for disclosure."

22   The Ninth Circuit also articulated the Rule's purpose: "Rule 37(c)(1) gives teeth to

23   those requirements [of Rule 26(a)] by forbidding the use at trial of any information

24   required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti*, *supra* at

25   1106. Indeed, in *Yeti*, the court acknowledged that, by excluding the expert's report,

26   "the district court made it more difficult perhaps impossible, for [defendant] to rebut

27   [plaintiff's] damages calculations."  *Id*. It held that exclusion was an appropriate

28   remedy for failing to fulfill the Rule 26(a) disclosure requirements. It noted that

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-10-

"[c]ourts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded," *Id.* at 1106, 1107. It also held that Rule 37(c)(1) puts the burden on the party facing sanctions to prove substantial justification or harmlessness. *Id.* at 1107, citing *Wilson v. Bradlees of New England, Inc*, 250 F.3d 10, 21 (1st Cir. 2001) ("It is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless...").

Here, it is undisputed that Centinela has failed to comply with Rule 26(a) by failing to serve any Initial Disclosures. Centinela also failed to respond to Defendants' requests for production of documents, requests for admissions, and interrogatories. As the party facing Rule 37(c)(1) sanctions, Centinela has the burden to show that its failure to comply with these Rules was substantially justified or harmless. *Yeti, supra,* at 1107.

AMCO has incurred significant costs defending against this lawsuit and complying with its discovery obligations. In contrast, Centinela has failed to prosecute its claims against AMCO, failed to comply with its discovery obligations under the Federal Rule of Civil Procedure and failed to comply with the deadlines set forth in the Court's original Scheduling Order (Dkt. No. 24), and Amended Scheduling Order (Dkt. No. 30). Further, while Plaintiff's counsel may be the cause of Centinela's failure to comply with its discovery obligations under the Federal Rules, "clients must be held accountable for the acts and omissions of their attorneys." *Mad Engine*, *supra,* 2010 WL 1644284 at *2.

Based on the Court's holding in *Mad Engine*, Plaintiff's unexcused failure to comply with its disclosure obligations under Rule 26 warrants the imposition of evidentiary sanctions under Rule 37, including barring Plaintiff from belatedly presenting any evidence in opposition to this motion.

/ / /

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

### B.    <u>Summary Judgment Standard</u>

Under the Federal Rules of Civil Procedure, summary judgment is proper where the pleadings and evidence before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under such circumstances, summary disposition is favored "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

For the reasons discussed below, summary judgment in AMCO's favor is appropriate because Plaintiff is precluded from presenting any evidence in support of an opposition to this motion based on its failure to provide its Initial Disclosures or respond to any written discovery. *See*, Fed. Rule Civ. Proc. 37(c)(1); *Mad Engine, Inc., supra,* 2010 WL 1644284.

Alternatively, the undisputed facts show that: (1) Plaintiff cannot establish that AMCO breached any contractual obligation to pay benefits owed to Plaintiff under the Policy for covered damage relating to the Loss; (2) Plaintiff's cause of action against AMCO for "bad faith" is without merit; and (3) no punitive damages are warranted because Plaintiff cannot meet its burden of presenting clear and convincing evidence establishing that AMCO intended to deliberately harm Plaintiff in conscious disregard of its rights.

### C.    <u>General Principles of Contract Interpretation</u>

The issue of contract interpretation is a question of law for the court to decide. *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 18 (1995). Insurance policies are to be interpreted when possible according to their plain meaning. Cal. Civ. Code § 1644; *Waller, supra*, 11 Cal.4th at 18. Under California law, an insurer "is entitled to limit its coverage to defined risks, and if it does so in clear language, [the court] will not impose coverage where none was intended." *Titan Corp. v. Aetna Casualty & Surety Company,* 22 Cal.App.4th 457, 469 (1994) (internal citations omitted.)

/ / /

The burden is on the party seeking to establish coverage to show that the claim against the insured falls within the subject policy's insuring provisions. *Waller, supra,* 11 Cal.4th at 16.  While the insurer has the burden of proving that an exclusion eliminates coverage for a tendered claim "[w]here a policy clearly excludes coverage, [the court] will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage." *Titan*, *supra*, 22 Cal.App.4th at 469.

### D.   Plaintiff's Breach Of Contract Claim Is Without Merit

#### 1.   Plaintiff's Breach of Contract Claim Fails Because There Is No Evidence of Accidental Physical Loss or Damage to Covered Property

To prevail on claim for breach of contract, Plaintiff must establish each of the following essential elements: (1) the existence of a contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to plaintiff.  *Reichert v. General Ins. Co*., 68 Cal.2d 822, 830 (1968). For the reasons discussed below, because there is no evidence that AMCO failed to pay policy benefits owed for the Claim, there can be no breach. *Id.* at 830.

The Policy affords property coverage for "direct physical loss of or damage to Covered Property…caused by or resulting from any Covered Cause of Loss." Under California law, a direct physical loss "contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen'l Ins. Co.*, 187 Cal.App.4th 766, 779 (2010). "The word 'direct' used in conjunction with the word 'physical' indicates the change in the insured property must occur by the action of the fortuitous event triggering coverage. In this sense, 'direct' means '[w]ithout intervening persons, conditions, or agencies; immediate.'"  *Id.*  (citation omitted.) "For there to be a 'loss' within the meaning of the policy, some external force must have acted upon the insured property to cause a physical change in the condition of the property…" *Id.* at 780.

-13-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Relevant to the Claim, Plaintiff has no evidence of any fortuitous event or external force that caused the gas line to crack. Without such evidence, Plaintiff cannot satisfy its burden to show that the Loss is covered in the first instance. Accordingly, AMCO is entitled to summary judgment. *See MRI Healthcare Center of Glendale, Inc., supra,* 187 Cal.App.4th at 778 (where insured could not satisfy its burden of proof to show that claimed damage to MRI machine was caused by "accidental direct physical loss" summary judgment properly granted).

### 2. Even If Plaintiff Could Satisfy Its Burden On The Policy's Insuring Agreement Requirements, Coverage for the Claim Is Barred By Applicable Exclusions

Where the property insurance is an "open risk" policy – covering all risks of physical loss except those specifically excluded – the limits of coverage are defined by the exclusions. *Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 406 (1989). Here, even if Plaintiff could show that the Claim involved a fortuitous direct physical loss within the scope of the Policy's insuring agreement, the Policy includes several exclusions, detailed below, that alternatively bar coverage for the Loss.

### i. The Policy's Wear and Tear Exclusion Bars Coverage for Damage Caused by Deterioration that Occurs Over Time

Relevant to the Claim, the Policy excludes "loss or damage" caused by or resulting from "wear and tear," as well as "deterioration [and] hidden or latent defect." Based upon statements provided by Shoshoni (Centinela's representative) regarding the cause of Loss, the information analyzed by AMCO when evaluating coverage for the Claim (including the lack of any evidence suggesting that the subject pipe was damaged by an abrupt external force), AMCO has produced unrefuted evidence that the damage was caused by wear and tear and/or deterioration over the three-year period given the date of the last routine pipe inspection at the Property. Thus, based on the information available as to the cause of the Loss, AMCO properly concluded it was normal use of the underground pipes and resulting wear and tear and/or deterioration which the Policy does not cover.

-14-

California law supports AMCO's position that damage caused by long term deterioration and wear and tear falls within the scope of this exclusion. *See e.g. Grebow v. Mercury Ins. Co.,* 241 Cal.App.4th 564, 567 (2015) (no coverage under a homeowner's policy for repairing structural damage caused by corrosion of supporting poles based on clear language of exclusion for loss caused by corrosion, wear and tear, deterioration, or rust); *Murray v. State Farm Fire & Casualty Co.,* 219 Cal.App.3d 58, 62-63 (1990) (wear and tear exclusion barred coverage for water leakage from a copper pipe caused by chemical reaction known as "electrolysis" and noting that it would be unreasonable to expect coverage for deterioration or wear and tear as this would convert an insurance policy into a maintenance agreement); *Butki v. United Serv. Auto. Assn.,* 225 Cal.App.3d 464, 466 (1990) (wear and tear exclusion barred claim for cracking of concrete foundations due to corrosive soils).

Here, there is no evidence suggesting that an external source damaged the subject pipe. Instead, based on the opinions of AMCO's consultants, the evidence supports the conclusion that the crack in the pipe or fitting that resulted in the vapor leak occurred naturally over an extended period time. Accordingly, based on information analyzed by AMCO in connection with the company's investigation regarding the Loss, the Policy and applicable law, AMCO properly concluded that coverage for the Claim was barred by the Policy's wear and tear exclusion.

### ii. Negligent Work/Faulty Maintenance Exclusion

Given the information gathered by AMCO during its investigation of the Claim, the Policy's negligent work/faulty maintenance exclusion alternatively bars coverage for the Loss. According to one of the engineers with whom AMCO conferred, improper backfilling and compacting of soil above and around the pipes likely caused damage to the underground pipe system at the Insured's Property. Accordingly, in the event that the Policy's insuring agreement requirements are satisfied in the first instance (*i.e.* Plaintiff can show there was an outside force that caused the pipe to accidentally crack as opposed to damage caused by deterioration

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

and wear and tear over time), coverage for the Loss is alternatively excluded by the Policy's negligent work/maintenance exclusions. California courts routinely enforce negligent work/maintenance exclusions to bar coverage for first party property damage claims. *See Waldsmith v. State Farm Fire & Cas. Co*., 232 Cal.App.3d 693 (1991) (property damage caused by city's negligent maintenance of a water main was not covered, because the subject all-risk policy excluded losses caused by "conduct, act, failure to act, or decision of any person, group, organization or government body whether intentional, wrongful, negligent, or without fault."); *Fu-Kong Tzung v. State Farm Fire & Cas. Co*., 873 F.2d 1338 (9th Cir. 1989) ("faulty workmanship" exclusion clearly bars coverage for losses caused by defects in design and construction of a building).

The available information indicated that the soil around the pipe may have been corrosive and not properly tested and/or was not properly compacted. Based on the unrebutted conclusion of AMCO's consultants, the Policy's negligent work/faulty maintenance exclusion alternatively bars coverage for the Claim.

### iii. Earth Movement/Settling Exclusion

The Policy's earth movement/settling exclusion bars coverage for: "loss or damage caused directly or indirectly by…[e]arth sinking…rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions included contraction, expansion, freezing, thawing, reposition, improperly compacted soil and the action of water under the ground surface." Additionally, the Policy excludes "loss or damage caused by or resulting from…[s]ettling, cracking, shrinking or expansion."

Courts have applied earth movement exclusions to slow-paced subsidence or movement. 5 New Appleman on Insurance Law Library Edition § 43.02 (2019); *New Zealand Ins. v. Lenoff*, 315 F.2d 95 (9th Cir. 1963) (where major settling occurred damaging insured's home, policy's "settling" exclusion barred coverage); *Brodkin v. State Farm Fire & Casualty Co*., 217 Cal.App.3d 210, 217 (1989)

-16-

(homeowner's policy did not cover cracks in the house's floor and foundation resulting from earth movement, in light of policy exclusion for (1) claims for settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roof, or ceilings, and (2) damage resulting from the sinking, rising, shifting, expanding or contracting of the earth.)

Based on the available information, to the extent coverage for the Loss is not barred by the wear and tear or negligent work/faulty maintenance exclusion, based on AMCO's communications with Reese (the engineer at Structural Design Consultants), the evidence supports AMCO's conclusion that the cause of the Loss was the settling of poorly compacted soil which would fall within the scope of the Policy's earth movement/settling exclusions.

### E. Plaintiff's Cause of Action for Bad Faith Is Without Merit

Under California law, a claim for breach of the implied covenant of good faith and fair dealing (*i.e.* "bad faith") can only be maintained where there has been a breach of a contractual obligation owed by the insurer. *Waller, supra,* 11 Cal.4th at 36. "[T]o establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001).

Here, Plaintiff cannot establish that AMCO withheld any benefits due under the Policy or acted unreasonably in connection with AMCO's handling of the Loss. As there was no evidence that the crack in the subject pipe was caused by a fortuitous and direct physical damage rather than deterioration of the pipe or wear and tear over time or by compaction of the ground above the pipe, AMCO properly concluded there was no coverage for the Loss. As there were no benefits due under the Policy, such benefits cannot be said to have been withheld unreasonably. Accordingly, there can be no bad faith liability as a matter of law. *Waller, supra,* 11 Cal.4th at 35.

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-17-

However, even in the unlikely event that Plaintiff could establish that AMCO's coverage position regarding coverage under the Policy was incorrect, Plaintiff still cannot prevail on a bad faith claim against AMCO.  Bad faith liability cannot be "prompted by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act" to deny policy benefits due to the insured. *Chateau Chamberay Homeowners' Assn. v. Assoc. Intern. Ins. Co.,* 90 Cal.App.4th 335, 346 (2001).  Where the facts surrounding an insurer's conduct are undisputed, "it is for the court, not a jury, to decide whether the insurer acted with 'proper cause'" in disputing coverage for a tendered claim. *Id*. at 350.

Pursuant to this fundamental California insurance law principle, referred to as the "genuine dispute doctrine," no bad faith liability exists if an insurer's coverage position is reasonable, even if it is ultimately proven to be incorrect. *Opsal v. United Services Automobile Assn.,* 2 Cal.App.4th 1197, 1205 (1991).  The "genuine dispute doctrine" applies to disputes that relate to both factual or legal issues. *See Chateau Chamberay*, *supra*, 90 Cal.App.4th at 347.

Upon receiving notice of the Claim, AMCO promptly took the recorded statement of Centinela's representative regarding the facts and circumstances of the Loss. Because Centinela had no evidence that an accidental direct physical force caused the subject pipe to crack, and because the evidence showed the Loss was caused by deterioration or normal wear and tear of the pipe, or improperly impacted soil above the pipe, AMCO reasonably concluded that the Policy did not cover the Claim. When Centinela's counsel challenged the coverage denial, AMCO reopened the Claim and retained an engineer to inspect the Loss. But Centinela's counsel did not cooperate with scheduling the inspection and instead filed suit against AMCO.

Based on the information Centinela submitted in support of the Claim and AMCO's investigation, AMCO reasonably concluded that the Policy did not afford coverage for the Claim.  However, even if the Court were to disagree with AMCO's coverage position, AMCO faces no extra-contractual exposure for the Claim based

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-18-

1   on the "genuine dispute doctrine" given the legitimate dispute as to the cause of the

2   Loss.  AMCO is entitled to judgment on Plaintiff's bad faith cause of action.

3       **F.   AMCO Cannot Be Liable for Punitive Damages as There is No
        Evidence that It Acted Maliciously, Oppressively or Fraudulently**

4

5       Even where a party may be entitled to compensatory damages, it does not

6   necessarily follow that it is entitled to punitive damages as "[s]omething more than

7   the mere commission of a tort is always required for punitive damages." *Mock v.*

8   *Michigan Mut. Ins. Co*., 4 Cal.App.4th 306, 328 (1992). As such, a "conclusory

9   characterization of defendant's conduct as intentional, willful and fraudulent is a

10  patently insufficient statement of 'oppression, fraud, or malice'…within the

11  meaning of Civil Code section 3294." *Brousseau v. Jarrett,* 73 Cal.App.3d 864, 872

12  (1977). Rather, specific, objective, factual allegations are required to support a

13  punitive damages claim. *Grieves v. Superior Court* 157 Cal.App.3d 159, 166 (1984).

14      Here, to recover punitive damages, Plaintiff must demonstrate that AMCO

15  intended to deliberately injure Centinela in conscious disregard of its rights by

16  denying coverage for the Claim under the Policy.  *Flyer's Body Shop Profit Sharing*

17  *Plan v. Ticor Title Ins. Co.,* 185 Cal.App.3d 1149, 1154 (1986). Further, in the

18  context of a motion for partial summary judgment on the issue of punitive damages,

19  the burden of proof which applies to punitive damage claims is the more stringent

20  clear and convincing evidence standard. *Basich v. Allstate Ins. Co.,* 87 Cal.App.4th

21  1112, 1118-21 (2001).  Moreover, Plaintiff can only seek punitive damages against

22  AMCO based on its imputed liability for the conduct of its employees and agents.

23  Thus, in addition to showing malice, oppression or fraud, Plaintiff must establish

24  that AMCO directed, authorized or later ratified any alleged conduct of its

25  employees. *Chodos v. Ins. Co. of N. America* (1989) 126 Cal.App.3d 86, 102.

26      Centinela cannot satisfy its heighted evidentiary burden to recover punitive

27  damages from AMCO.  The only "facts" alleged in the complaint in support of

28  Plaintiff's punitive damages claim consist of conclusory statements that AMCO's

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   conduct was "willful" and that in denying coverage, AMCO "committed fraud and

2   acted with conscious disregard of Plaintiff's rights and did so in an oppressive and

3   despicable manner…" (UMF 39.)   Nor does Plaintiff have any evidence that a

4   managing agent of AMCO authorized or ratified any alleged improper and

5   outrageous conduct which would support an award of punitive damages.  Given that

6   Plaintiff alleges no specific facts and has no credible evidence to warrant the

7   imposition of punitive damages against AMCO, Plaintiff's claim for punitive

8   damages should be summarily dismissed. *See* Cal. Code Civ. Proc. § 437c(f).

9   ## V.   CONCLUSION

10      For the foregoing reasons, AMCO respectfully requests this Court grant

11  summary judgment in its favor with respect to all claims alleged in Plaintiff's

12  Complaint.

13  Dated:  December 11, 2020      GORDON REES SCULLY MANSUKHANI, LLP

15                      By:   */s/ Michelle R. Bernard*

16                            Michelle R. Bernard  (SBN:  144582)

16                            Laura G. Ryan (SBN:  184363)

17                            Attorneys for Defendant

                              AMCO INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1202982/53848966v.1