UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Centinela Gas Station, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Crum and Forster Specialty<br><br>Insurance Company et al.,<br><br>Defendants. | 2:19-cv-10805-VAP-KSx<br><br>**Order GRANTING Motion for Summary Judgment (Dkt. 31)** |

Before the Court is Defendant AMCO Insurance Company ("Defendant" or "AMCO") Motion for Summary Judgment or Partial Summary Judgment. (Dkt. 31, "Motion"). Plaintiff Centinela Gas Station, Inc. ("Plaintiff" or "Centinela") has not opposed the Motion.

After considering all the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court GRANTS the Motion.

### I.     PROCEDURAL BACKGROUND

This case arises out of an insurance coverage dispute between Plaintiff and Defendants AMCO and Crum and Forster Specialty Insurance Company America (collectively, "Defendants"). Plaintiff claims Defendants

1

failed to provide coverage for "a vapor leak at its insured Property." (Dkt. 1-2, at 3, ¶ 9).

On November 19, 2019, Plaintiff filed this instant lawsuit against Defendants in the California Superior Court for the County of Los Angeles alleging two claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing. (Dkt. 1-2). On December 20 and 24, 2019, Defendants removed the case to this Court on the basis of diversity jurisdiction. (Dkts. 1, 21). Plaintiff has consistently failed to meet deadlines in this case and has not participated in any discovery. (Dkts. 30, 39).

On December 11, 2020, AMCO filed a Motion for Summary Judgment or in the Alternative, Partial Summary Judgment. (Dkt. 31). Plaintiff failed to oppose the Motion or meet and confer with AMCO regarding the Motion.

## II.     FACTUAL BACKGROUND

AMCO filed a statement of undisputed facts. (Dkt. 31-2). To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision. The Court has reviewed independently the admissibility of the evidence that Defendant has submitted and has not considered evidence that is irrelevant or inadmissible. At the summary judgment stage, a district court should "focus on the admissibility of the [evidence's] contents" and not the form in which the evidence is presented—it is sufficient that a party will be able to produce evidence in its admissible form at trial. *See Fraser v. Goodale*, 342

F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

### A. Undisputed Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of Defendant's Motion. *See* Local Rule 56-3.

#### 1. The Policy

Plaintiff entered into a business property insurance policy (the "Policy") with AMCO on or about March 1, 2018. (Dkt. 31-6; Dkt. 31-2 "SSUF", ¶ 50). The Policy lists the gas station located at 6900 S. Centinela Avenue in Culver City, California ("Property" or "Gas Station") as a scheduled insured location. (Dkt. 31-6; SSUF, ¶¶ 50-52). The policy provides in pertinent part:

**A. COVERAGES**

We will pay for direct physical loss of or damage to Covered Property…caused by or resulting from any Covered Cause of Loss.

…

**3. COVERED CAUSE OF LOSS**

This Coverage Form insures against Risks of Direct Physical Loss unless the loss is:

**a. Excluded in Section B. EXCLUSIONS**

**B. EXCLUSIONS**

1. We will not pay for direct loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss….

…

    b. **Earth Movement**

        …

        (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundation or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, [and] improperly compacted soil...

2. We will not pay for loss or damage caused by or resulting from any of the following:

…

    **l. Other Types Of Loss**

        (1) Wear and tear;

        (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

        …

        (4) Settling, cracking, shrinking or expansion;

        …

But if an excluded cause of loss that is listed in paragraphs (1) through (7) above results in a "specified cause of loss", "accident" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

    3.    We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.c. But if an excluded cause of loss that is listed in B.3.a. through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

…

    **c.**    **Negligent Work**

        Faulty, inadequate or defective:

…

        (2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect property;

…

(SSUF, ¶¶ 50-52).

### 2. The Vapor Leak Claim

On November 13, 2018, Centinela discovered that there was a vapor leak from an underground gas line at the Property ("Claim" or "Loss"). (SSUF, ¶ 2). Centinela reported the Claim to AMCO on December 4, 2018 requesting coverage for costs to repair the broken gas line under the Policy. (*Id.*)

On January 22, 2019, Keith Sklerov, the adjuster assigned to the Claim, took the recorded statement of Kevin Shamshoni ("Shamshoni"), Centinela's representative and general manager of the gas station. (*Id.*, ¶¶ 3-4). Shamshoni explained that the leak was discovered during a routine standard test performed in November 2018. (*Id.*, ¶ 5).

According to Shamshoni, the company that performed the testing suggested the leak may have been caused by a "bushing" (a threaded fitting that connects the gas lines) that "could be off" causing the vapor to escape into the ground. (*Id.*, ¶ 7). Shamshoni reported that there was no fuel being released at the Property, only vapor. (*Id.*, ¶ 6). Shamshoni advised that the leak did not require the Gas Station to shut down and there was no interruption in business. (*Id.*, ¶ 9).

Based on the information available to AMCO, including the recorded statement taken of Shamshoni, on January 30, 2019, AMCO denied coverage for the Claim under the Policy. (*Id.*, ¶ 11). AMCO denied the Claim because it appeared that there was no direct physical damage to the Property as there was no damage to the surface above the pipeline that would suggest the damage was caused by something aboveground. (*Id.*, ¶ 12). AMCO also reasoned that the gas line appeared to be leaking as a result of normal wear and tear and deterioration or faulty construction in the original installation of the line, which are excluded causes under the Policy. (*Id.*, ¶ 13).

On June 13, 2019, Centinela's then-attorney, Glenn T. Rosen, sent a letter to AMCO claiming that he had been retained to investigate the denial of coverage and AMCO's possible failure to properly investigate the Claim. (*Id.*, ¶ 15). Following receipt of Rosen's letter requesting that AMCO reconsider its coverage denial for the Loss, on June 20, 2019, AMCO reopened the Claim. (*Id.*, ¶ 16). The following day, Sklerov contacted engineer Rick Reese of SDC Associates to discuss the Loss and potential causes of the pipe leak. (*Id.*, ¶ 17). Reese opined that the soil used to backfill the pipers may have been corrosive. (*Id.*, ¶ 18). Reese alternatively opined that if the weight of the vehicles above the piping system caused damage to the pipe, it would have been due to faulty workmanship because the soil around the pipe was not properly compacted. (*Id.*, ¶ 19).

On July 25, 2019, Sklerov spoke to Brian Heintz of ProNet Group ("ProNet") to retain ProNet to investigate the cause of the Loss and advised Rosen of ProNet's retention. (*Id.*, ¶ 23). On July 25, 2019, Sklerov emailed Rosen advising that AMCO had retained ProNet to inspect the Loss location and determine the cause of the Loss. (*Id.*, ¶ 24). On August 20, 2019, Sklerov sent Rosen a letter listing the information and documentation that ProNet wanted in advance of the Loss inspection. (*Id.*, ¶ 25). On September 11, 2019, Sklerov left Rosen a voicemail message following up on the requested information. (*Id.*, ¶ 26). On September 19, 2019, Sklerov followed up again via letter recounting the information needed to conduct the inspection. (*Id.*, ¶ 27). AMCO then advised that if it did not hear back from Rosen by September 30, 2019, it would assume Centinela was no longer pursuing the Claim. (*Id.*, ¶ 28).

On November 18, 2019, Rosen advised AMCO that he had called ProNet to schedule the Loss inspection but ProNet stated that Rosen would need to check with AMCO to see if AMCO still wanted to go forward with the inspection. (*Id.*, ¶ 30). Rosen also noted that the contractual statute of limitations was set to expire the following day and asked AMCO if it would agree to toll the statute of limitations for 90 days to allow for continued investigation. (*Id.*, ¶ 31). The following day, November 19, 2019, AMCO called Rosen's office to discuss tolling the statute of limitations but was advised that the lawsuit was already filed. (*Id.*, ¶ 32).

## III.  LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (*reconciling Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the

material facts" but must show specific facts which raise a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV. DISCUSSION

This Court is sitting in diversity jurisdiction and therefore applies California substantive law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

### A. Evidentiary Sanctions

AMCO first asks the Court to issue an evidentiary sanction against Plaintiff, which would bar Plaintiff from presenting any evidence in Opposition to the Motion. (Dkt. 31-1, at 9). Under Rule 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Here, AMCO argues that Rule 37 applies here because Plaintiff has failed to participate in any discovery in this case, including failing to provide its initial disclosures. Although Plaintiff's failure to participate in this litigation is indeed troubling, the Court declines to address whether dismissal as a Rule 37 sanction is appropriate here, as Plaintiff has failed to oppose the Motion altogether and has thus not presented any evidence in opposition to the Motion.

## B.   Breach of Contract Claim

Defendant argues that it is entitled to summary judgment on Plaintiff's Breach of Contract claim because Plaintiff has not established a breach. (Dkt. 31-1, at 13).

The interpretation of an insurance policy is usually a question of law. *Waller v. Truck Ins. Exch. Inc.*, 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995); *see GGIS Ins. Services, Inc. v. Sup. Ct.*, 168 Cal. App. 4th 1493, 1507, 86 Cal. Rptr. 3d 515 (2008) ("The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence."). An insurance policy is a contract, so the normal rules of contract interpretation apply. *See Safeco Ins. of America v. Robert S.*, 26 Cal. 4th 758, 762-63 (2001). To prevail on a claim for breach of contract, Plaintiff must establish each of the following elements: (1) the existence of a contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to plaintiff. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968).

Defendant argues that Plaintiff cannot establish the existence of a breach. Defendant first argues that benefits were not owed for Plaintiff's Claim because there was no direct physical loss or damage to the Property caused by a Covered Cause of Loss.

The Policy covers "direct physical loss of or damage to Covered Property…caused by or resulting from any Covered Cause of Loss." (Dkt. 31-6). Under California law, a direct physical loss "contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen'l Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010). The word "'direct' means '[w]ithout intervening persons, conditions, or agencies; immediate' … [f]or loss to be covered, there must be a 'distinct, demonstrable, physical alteration' of the property." (*Id.*) The accidental direct physical loss requirement is part of the policy's insuring clause and accordingly falls within Plaintiff's burden of proof. (*Id.* at 778).

Defendant having pointed to an element for which Plaintiff bears the burden of proof, the Court examines whether Plaintiff can satisfy its burden. Here, Plaintiff fails to do so. The uncontroverted facts do not demonstrate that the alleged damage to the gas line was caused by an accident or fortuitous event that would be covered under the Policy. To the contrary, Defendant has provided evidence that suggests the leak occurred due to faulty repairs, normal wear and tear, or defective soil. Plaintiff has failed to

provide any evidence to create a triable issue of fact concerning the presence of a fortuitous event that could trigger the Policy. The Court accordingly GRANTS summary judgment on the Breach of Contract Claim[1].

**C.    Bad Faith Claim**

AMCO next argues that it is entitled to summary judgment on Plaintiff's bad faith claim because it did not breach the policy or act unreasonably in its decision to deny benefits. (Dkt. 31-1, at 17). The Court agrees.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal.*, Inc., 2 Cal. 4th 342, 371-72 (1992). Plaintiff's second claim alleges Defendant breached this duty by, *inter alia*, failing to carry out a prompt, thorough, fair, and objective investigation of Plaintiff's claims. (Dkt. 1-2, Complaint, at 7-9).

"The primary test" for a breach of an insurer's duty of good faith and fair dealing "is whether the insurer withheld payment of an insured's claim unreasonably and in bad faith. Where benefits are withheld for proper cause, there is no breach of the implied covenant." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). "It is clear that if there is no potential for coverage . . ., there can be no action for breach of the implied covenant

---

[1] Defendant also argues that Plaintiff's Claim is alternatively barred by various exclusions under the Policy. The Court need not address the exclusions as Defendant is already entitled to summary judgment on the Breach of Contract Claim.

of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36 (*citing Love*, 221 Cal. App. 3d at 1151-53). The Court, having determined Defendant properly withheld benefits under the Policy, necessarily must find there is no breach of the covenant of good faith and fair dealing.

Moreover, "a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'" *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) (*quoting Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001)). Where the record "fails to show that [an insurer] breached its duty to defend or disregarded its right to investigate and settle the claim," summary judgment is appropriate. *A.S.A. Produce Co. v. Everest Nat. Ins. Co.*, 318 F. App'x 589, 591 (9th Cir. 2009).

Here, Defendant has established it investigated Plaintiff's claim and determined Plaintiff's statements and actions voided the Policy. The record shows Defendant received Plaintiff's account of the incident, reviewed Plaintiff's statements, consulted experts regarding the damage, and requested that Plaintiff provide additional information so that Defendant could further investigate the claim after Plaintiff's attorney complained that the denial was improper. The evidence shows Defendant attempted to conduct a further investigation, but Plaintiff's attorney failed to respond timely to the request. Moreover, Plaintiff has failed to provide any evidence to suggest Defendant was unreasonable in its investigation. In sum,

Defendant easily satisfies the requirement of showing no genuine dispute existed as to coverage.

Accordingly, the Court GRANTS summary judgment for Defendant on Plaintiff's second claim.

**D.      Punitive Damages**

Plaintiff also seeks punitive damages for AMCO's alleged breach of the duty of good faith.  "[B]ad faith by an insurer is subject to tort remedies, including punitive damages." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002).  The Court has nevertheless concluded that AMCO did not act in bad faith; Plaintiff's claim for punitive damages must thus fail.  The Court therefore GRANTS AMCO's Motion for Summary Judgment on the question of punitive damages.

## V.      CONCLUSION

The Court therefore GRANTS AMCO's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated:   1/25/21

Virginia A. Phillips
United States District Judge

14